UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RAPID CITY/BH LODGING, LLC, and OUTFITTER LODGING, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>AMGUARD INSURANCE COMPANY,<br><br>Defendant. | 4:23-cv-_4053_____<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs Rapid City/BH Lodging, LLC and Outfitter Lodging, LLC, by and through their counsel of record, and for their causes of action against Defendant, do hereby state and allege as follows:

## NATURE OF THE ACTION

This is a breach of contract and bad faith action brought by Plaintiffs Rapid City/BH Lodging, LLC and Outfitter Lodging, LLC (collectively, "Plaintiffs") against Defendant AmGuard Insurance Company ("Defendant"). Plaintiffs suffered a covered hail event that occurred on or around June 4, 2020. They seek to be made whole pursuant to the benefits available to them as insureds under their policy with Defendant. Plaintiffs also seeks to hold Defendant accountable for its bad faith handling of Plaintiffs' claims.

## PARTIES

1.     Plaintiff Rapid City/BH Lodging, LLC is a corporation formed in South Dakota with its principal place of business in Waite Park, Minnesota.

2.     Plaintiff Outfitter Lodging, LLC is a corporation formed in South Dakota with its principal place of business in Waite Park, Minnesota.

3.     Upon information and belief, Defendant AmGuard Insurance Company is a corporation duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of Pennsylvania.

## JURISDICTION AND VENUE

4.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 based upon the diversity of the Parties. The amount in controversy exceeds the sum of $75,000.

5.     A substantial part of the events giving rise to this action occurred in South Dakota, and thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

6.     Plaintiff Rapid City/BH Lodging, LLC owns the Cambria Hotel Rapid City, which is located at 3333 Outfitter Road, Rapid City, South Dakota 57701 (the "Cambria"), and Plaintiff Outfitter Lodging, LLC owns the MainStay Suites Rapid City, which is located at 3321 Outfitter Road, Rapid City, South Dakota 57701 (the "MainStay").

7.     Defendant provided property coverage to Plaintiffs pursuant to an insurance policy issued as Policy Number RABP187102 (the "Policy"). *See* attached as **Exhibit A**. The Policy was paid in full, effective and in force during the relevant dates in this matter.

8.     Plaintiffs upheld their obligation, under the insurance contract, to pay their premiums.

9.     Plaintiffs were insured under the Policy which provided benefits for hail damage to both the Cambria and the MainStay.

10.    Defendant had the opportunity to inspect the Cambria and the MainStay before issuing the Policy.

11.    The Cambria and the MainStay were damaged in a severe hailstorm on or about June 4, 2020, that produced hail estimated to be between 1.25 to 1.9 inches in diameter (the "Storm").

12.    The Storm caused extensive, widespread and plainly visible damage to the Cambria and the MainStay.

13.    Hail damage, as well as loss of business income, are covered losses under the Policy.

14.    During the Storm, the Cambria suffered substantial damage to, among other things, its exterior insulation and finish system and its roof, including the roof's thermoplastic membrane covering and wood fiberboard substrate.

15.    During the Storm, the MainStay suffered substantial damage to, among other things, its siding, stucco, gutters, roof and windows.

16.    The loss of the Cambria's entire roof was not fairly debatable nor was the damage sustained by the MainStay.

17.    Plaintiffs submitted a timely claim to Defendant for the damages caused by the Storm to the Cambria and the MainStay.

18.    Authorized agents of Defendant have inspected the damage to the Cambria and the MainStay.

19.     Defendant repeatedly delayed processing Plaintiffs' claims, failed to communicate with Plaintiffs and mismanaged Plaintiffs' claims for months.

20.     In February of 2022, Defendant informed Plaintiffs that two storm events had occurred—the June Storm at-issue and a second storm in July of 2022—and Plaintiffs needed to determine the damage that resulted from each storm.

21.     Plaintiffs informed Defendant that all the damages Plaintiffs had provided Defendant were from the June Storm.

22.     Then in May of 2022, Defendant claimed it was impossible to differentiate the damage, and it would only be addressing the damages from the June Storm.

23.     Defendant has repeatedly delayed the process with invalid excuses.   For example, Defendant delayed an inspection by claiming snow was covering the properties. Plaintiffs sent Defendant images of the buildings, showing that the buildings were free from snow cover.  Defendant also transferred the claims between four claims handlers who each requested documents and information that Plaintiffs had already sent to the prior claims handler.

24.     Over a year and a half after the Storm, Defendant hired HAAG Engineering Company out of Dallas, Texas, to examine the Cambria's roof and relied upon the opinions of HAAG Engineering Company to deny Plaintiff Rapid City/BH Lodging, LLC's coverage.

25.     HAAG Engineering Company never traveled to the Cambria, but rather it based its opinion upon one sample of the roof that was sent to its laboratory.

26.     Upon information and belief, HAAG Engineering regularly and routinely provides opinions to insurance companies that reduce the insurers' claims payments.  This has

4

resulted in numerous lawsuits and investigations being filed across the nation against both the hiring insurance companies and HAAG Engineering for its bias practices, including State Farm issuing a nationwide "moratorium" preventing its company from using HAAG Engineering.

27.     HAAG Engineering is transparently biased in favor of insurance companies.

28.     Regarding the Cambria, HAAG Engineering reached the conclusions that (1) the Cambria's roof was not damaged by hail; (2) the sample contained a shallow dent that was inconsequential to TPO roofing membrane; and (3) the segment of fiberboard contained a gouge consistent with mechanical contact.

29.     Around May 17, 2022, Defendant used the HAAG report in an attempt to devalue Plaintiff Rapid City/BH Lodging, LLC's claim for the damages sustained by the Cambria.

30.     Defendant contacted Plaintiff Rapid City/BH Lodging, LLC to provide notice that it would not provide coverage for the Cambria's entire roof and the damage caused by the holes in the roof.

31.     Plaintiff Rapid City/BH Lodging, LLC, along with a public adjuster and Plaintiffs' insurance agent, each contacted Defendant and notified the Defendant of the errors contained in the HAAG report and that Defendant's decision was contrary to the undisputed evidence.

32.     Defendant, and its agents, repeatedly delayed their responses resulting in the Plaintiffs, the public adjuster and Plaintiffs' insurance agent each notifying Defendant that the claims were two years old, and the claims needed to be expeditiously reviewed.

33.     In July of 2022, Defendant provided Plaintiffs estimates for damages to the Cambria and the MainStay. The estimates were unreasonably low and failed to include numerous items that had been damaged in the Storm.

34.     Plaintiffs responded to Defendant and notified Defendant that its estimate failed to account for numerous damages which resulted from the Storm.

35.     On August 4, 2022, Defendant responded to Plaintiffs and reprimanded Plaintiffs for the tone of Plaintiffs' email. In the same email, Defendant failed to acknowledge or address the issues Plaintiffs raised with Defendant's estimates.

36.     Plaintiff Rapid City/BH Lodging, LLC hired its own consultant to review the Cambria's damage and provided its consultant's findings to Defendant.

37.     Plaintiff Rapid City/BH Lodging, LLC's consultant concluded that the Cambria's roof's damage was consistent with hailstorm impact, the thermoplastic membrane exhibited indentations at coincident spatter marks which compromised the structural integrity of the membrane and shortened its useful life, and the indentations on the wood fiberboard substrate below the membrane were consistent with hailstorm impact.

38.     Plaintiffs sent Defendant a sworn proof of loss, proof of loss estimate, photos of the loss, their consultant's report and a repair letter on October 28, 2022.

39.     On November 2, 2022, Defendant responded that it had forwarded the information to the claims review team.

40.     Defendant's claims representative sent an internal email to members of Defendant's organization stating, "I received the below information and attached documents from this public adjuster. Please let me know your thoughts as we've already issued out the

payment at recoverable depreciation of around $532,000. Do we need a reinspection with this PA to finalize? Not aware of matching requirements for South Dakota." However, Defendant never took any steps to review the information provided by Plaintiffs.

41.     Defendant did not respond to Plaintiffs' information sent on October 28, 2022. Rather, Defendant, on December 15, 2022, sent Plaintiffs a letter stating that Plaintiffs needed to complete a Settlement Agreement to resolve the claims, but Defendant never provided Plaintiffs the Settlement Agreements.

42.     Plaintiffs emailed Defendant, on January 15, 2023, and asked Defendant if it was accepting the claim amounts Plaintiffs provided in their October 28 email. Plaintiffs were confused because Defendant had not responded to the additional information Plaintiffs had provided.

43.     Defendant has yet to acknowledge the information sent by Plaintiffs on October 28.

44.     The Storm occurred nearly three years ago, and Defendant has yet to tender payment to Plaintiffs for the entire losses sustained by the Cambria and the MainStay.

45.     Defendant knew or should have known that HAAG Engineering regularly and routinely provides opinions to insurance companies that wrongfully reduce an insurer's claim payments.

46.     Defendant consciously and/or recklessly disregarded the clear information showing the damages resulting from the Storm.

47.     Defendant failed to conduct a reasonable investigation of the hail damage and failed to pay for the full extent of the hail damage that occurred including, but not limited to,

a total loss of the Cambria's roof and damage to the exterior insulation and finish system and damage to the MainStay's siding, stucco, gutters, roof and windows.

48.     Defendant knew or should have known that its investigation was biased in favor of Defendant.

49.     Had Defendant performed a reasonable investigation and/or evaluation of Plaintiffs' claims, it would have determined that compensable losses occurred during the policy period and would have provided Plaintiffs benefits for the total loss.

50.     Defendant has a pattern and practice of conducting sham investigations of weather-related property damage claims.

51.     Upon information and belief, Defendant has a pattern and practice of hiring biased companies to assist in conducting sham evaluations of its insureds' properties.

52.     Defendant has a pattern and practice of limiting its payments to its insureds by failing to conduct reasonable initial investigations and intentionally and/or recklessly offering low amounts of benefits owed under its insureds' policies, including Plaintiffs.

53.     Part of each premium Defendant charges its insureds includes a portion for the expenses required to properly investigate claims.

54.     Defendant had a duty to perform a reasonable investigation of Plaintiffs' claims.

55.     A reasonable investigation requires an insurer to look for reasons to pay, and not just reasons not to pay.

56.     In evaluating Plaintiffs' claims, Defendant needed to give just as much consideration to Plaintiffs' interests to receive what Defendant promised, consistent with the Policy, as Defendant gave to its own interests.

57.     Defendant has a duty to assist Plaintiffs with identifying facts that support a payment that would fully fix the Cambria and the MainStay.

58.     Defendant could not eliminate its duties of good faith and fair dealing by delegating these duties to an adjuster and/or a hired third party.

59.     Defendant's claims handling process, as described in this *Complaint*, is designed to deny payment to its insureds, including Plaintiffs, for the full amount owed under the insurance policy.

60.     As a result of Defendant's claims handling process, as described in this *Complaint*, Plaintiffs have been damaged including, but not limited to, the following:

> (a)     Plaintiffs have been deprived of the benefits of the contract and of the timely fixing of the Cambria and the MainStay;
> (b)     The Cambria and the MainStay have sustained additional consequential damages as a result of Defendant's sham investigation and refusal to pay benefits due under the Policy;
> (c)     Plaintiffs have lost business income;
> (d)     Plaintiffs will incur additional expenses as building materials have greatly increased in price;
> (e)     Plaintiffs were forced to obtain a consultant at their own expense; and
> (f)     Plaintiffs were forced to retain lawyers at their own expense.

## COUNT 1
*Breach of Contract*

61.     Plaintiffs restate the previous paragraphs of this *Complaint* as though fully set forth herein.

62.     Plaintiffs and Defendant entered into a contract whereby Plaintiffs paid premiums to Defendant in exchange for a promise to pay policy benefits for a covered loss.

63.     Defendant has breached the contract of insurance with Plaintiffs by failing to pay the full amount of benefits owed to Plaintiffs under the Policy in a timely manner.

64.     Defendant also breached the contract by unreasonably delaying the payment of benefits.

65.     Because of Defendant's breach of its duties under the Policy, Plaintiffs have suffered damages including, but not limited to, the remaining benefits Plaintiffs are owed under the terms of the Policy, lost business income, interest thereon and other consequential damages.

66.     Defendant's refusal to pay the full amount of losses was vexatious and without reasonable cause and Plaintiffs are entitled to attorneys' fees pursuant to SDCL 58-12-3.

## COUNT 2
*Bad Faith*

67.     Plaintiffs restate the previous paragraphs of this *Complaint* as though fully set forth herein.

68.     Because the Policy constituted a contract of insurance between Defendant and Plaintiffs, there existed an implied covenant of good faith and fair dealing between them.

69.     Plaintiffs suffered losses within the policy period that were compensable under the terms of the Policy, provided timely notice to Defendant of the occurrence giving rise to coverage and demanded payment for the same.

70.     Defendant knew that there was a lack of reasonable basis for denial of the claims, or else acted in reckless disregard as to whether or not a reasonable basis existed for the denial of the claims.

71.     Defendant denied and undervalued Plaintiffs' claims for benefits in violation of the implied covenant of good faith and fair dealing and thereby committed bad faith.

72.     Defendant denied benefits even though the damage to the Cambria's roof and exterior insulation and finish system, as well as the MainStay's siding, stucco, gutters, roof and windows, among other damages, were not fairly debatable.

73.     Defendant used unfair and deceptive acts and practices in dealing with Plaintiffs' claims for coverage through, among other things, its failure to acknowledge and act on the claims, its failure to adhere to reasonable standards regarding the handling of the claims, its failure to review information provided by the Plaintiffs and its failure to reasonably investigate the claims.

74.     Defendant intentionally and/or recklessly utilizes a claims handling process designed to maximize its profits and incentivize its claims handlers at its insured's expense including, but not limited to, hiring biased companies and consultants to evaluate its insureds' claims and sharing profits with its claims handlers.

75.     Defendant intentionally and/or recklessly utilizes a claims handling process designed to delay the payment of benefits owed under the terms of the Policy.

76.     Defendant intentionally and/or recklessly utilizes a claims handling process designed to deny the full payment of benefits owed under the terms of the Policy.

77.     Defendant's pattern and practice of refusing to provide coverage and honor the plain terms of its insurance contract caused substantial damages to Plaintiffs including, but not limited to, attorneys' fees, consultant fees, increased material costs, lost business income and additional damage to the Cambria and the MainStay.

78.     Defendant's refusal to provide coverage and to honor the plain terms of its insurance contract was willful, wanton and with reckless disregard, entitling Plaintiffs to an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(1)     For Plaintiffs' compensatory, general, special and punitive damages in an amount that the jury deems just and proper under the circumstances;

(2)     For attorneys' fees pursuant to SDCL 58-12-3;

(3)     For Plaintiffs' costs and disbursements herein;

(4)     For pre-judgment and post-judgment interest; and

(5)     For such other and further relief as the Court determines to be just and proper.

Dated this 14th day of April, 2023.

JOHNSON, JANKLOW &
ABDALLAH, L.L.P.

BY _____

Scott A. Abdallah (scott@janklowabdallah.com)
Erin Schoenbeck Byre (erin@janklowabdallah.com)
101 South Main Avenue, Suite 100
Sioux Falls, SD 57104
(605) 338-4304

*Attorneys for the Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demands trial by jury on all issues so triable.

Scott A. Abdallah
Erin Schoenbeck Byre

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Rapid City/BH Lodging, LLC & Outfitter Lodging, LLC

**DEFENDANTS**
Amguard Insurance Company

**(b)** County of Residence of First Listed Plaintiff   Stearns (MN)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Luzerne (PA)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott Abdallah & Erin Schoenbeck Byre, Johnson Law Firm, 101 South Main Avenue, Suite 100, Sioux Falls, SD 57104 (605-338-4304)

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                    | PTF | DEF |                                              | PTF | DEF |
|------------------------------------|-----|-----|----------------------------------------------|-----|-----|
| Citizen of This State              | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State           | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                        | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|------------|----------------|
| ☒ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 ; 28 U.S.C. § 1391(b)(2)
Brief description of cause:
Breach of Contract / Bad Faith Claim

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE 04/14/2023
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

JS 44 Reverse  (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.